IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID K. PORATH,<br><br>                Petitioner,<br><br>vs.<br><br>CHRISTOPHER MILLER, Superintendent,<br>Great Meadow Correctional Facility,[1]<br><br>                Respondent. | No. 9:15-cv-00091-JKS<br><br>MEMORANDUM DECISION |

David K. Porath, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Porath is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Great Meadow Correctional Facility. Respondent has answered the Petition, and Porath has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On direct appeal of his conviction, the Appellate Division described the following facts underlying Porath's case:

> Following what [Porath] characterized as a "crime spree" in which he "committed some burglaries," he was charged by indictment with burglary in the second degree and petit larceny in Montgomery County. Pursuant to a plea agreement, [Porath] pleaded guilty to burglary in the second degree in full satisfaction of the indictment and waived his right to appeal. The plea agreement also provided that the People would not seek to file additional charges against [Porath], that [Porath] would be sentenced to a prison term of 10 years followed by five years of postrelease supervision and restitution, and that the sentence would run concurrently with sentences previously imposed in other

---

[1] Christopher Miller, Superintendent, Great Meadow Correctional Facility, is substituted for Harold Graham, Superintendent, Auburn Correctional Facility. FED. R. CIV. P. 25(c).

jurisdictions. Following a restitution hearing, [Porath] was sentenced as agreed and restitution in the amount of $640.50 was imposed.

*People v. Porath*, 960 N.Y.S.2d 748, 749 (N.Y. App. Div. 2013)

Through counsel, Porath appealed his conviction, arguing that his guilty plea and waiver of appeal were unknowingly and involuntarily made and his sentence was unduly harsh and excessive. On March 21, 2013, the Appellate Division issued a reasoned decision unanimously affirming the judgment against Porath in all respects. *Porath*, 960 N.Y.S.2d at 749. The appellate court found that Porath's plea and his appellate waiver were made knowingly and voluntarily such that it foreclosed any non-jurisdictional challenge to his conviction. *Id.* Porath sought leave to appeal the denial to the Court of Appeals, which was summarily denied on July 16, 2013. *People v. Porath*, 994 N.E.2d 397 (N.Y. 2013).

Proceeding *pro se*, Porath moved to set aside his sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20 on the ground that the prosecutor had withheld certain documents in violation of *Brady*.[2] According to Porath, he would not have pled guilty had he known some of the information in the undisclosed materials. In a decision and order dated January 9, 2014, the § 440.20 court denied the motion. The Court of Appeals denied his application for leave to appeal without comment on July 1, 2014. *People v. Porath*, 17 N.E.3d 510 (N.Y. 2014).

Porath timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court on January 1, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Porath argues that: 1) the prosecution withheld exculpatory *Brady* material; 2) his guilty plea was not knowing and intelligent because he was not aware of the withheld evidence; 3) the prosecutor committed misconduct by withholding *Brady* material; 4) the *Brady* evidence revealed inconsistencies in the prosecution's case; and 5) his trial counsel was ineffective for failing to investigate certain discrepancies in the evidence against him.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

3

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation omitted); *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally, a knowing and voluntary guilty plea precludes habeas corpus review of claims relating to constitutional rights at issue prior to entry of the plea."). This bar applies as well to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea). Indeed, "a guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006); *see also Wyatt v. United States*, No. 10–CV–5264, 2015 WL 1514385, at *5 (E.D.N.Y. Mar. 31, 2015). Accordingly, a petitioner "may only attack the voluntary and intelligent character of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997).

In this case, as the Appellate Division found on direct appeal, "County Court apprised [Porath] of the consequences of his plea and the rights he was forfeiting. [Porath] confirmed his understanding and further demonstrated his comprehension of the process and his rights by raising relevant concerns throughout the proceedings, each one of which was considered and

appropriately addressed by the court." *Porath*, 960 N.Y.S.2d at 749. Porath does not challenge the Appellate Division's factual finding here, nor could he, as it is fully supported by the record. By voluntarily pleading guilty, Porath has forfeited his right to bring claims premised on actions that the prosecutor took, or that his counsel should have taken, prior to the plea process. Consequently, Porath is not entitled to relief on Grounds 1, 3, 4, or 5.

Some district courts within this Circuit have opined that an individual's right to receive *Brady* material cannot be waived, however, notwithstanding the existence of a valid guilty plea. *See United States v. Sapia*, No. 02 CIV 649, 2002 WL 620483, at *9 n. 4 (S.D.N.Y. Apr. 18, 2002) (citation omitted), *remanded on other grounds Sapia v. United States*, 108 F. App'x 661 (2d Cir. Aug. 4, 2004); *see also Brown v. Berbary*, No. 01-CV-6500, 2004 WL 1570258, at *4-5 (W.D.N.Y. June 16, 2004); *Fambo v. Smith*, 433 F.Supp. 590 (W.D.N.Y.) (passim), aff'd, 565 F.2d 233 (2d Cir. 1977). These courts have concluded that, where a *Brady* claim may be construed as an attack on the voluntariness of a defendant's plea, it survives the entry of his guilty plea. *See Tollett*, 411 US. at 267. The Court will therefore consider the merit of Ground 2, which alleges that the *Brady* violation affected the voluntariness of his plea.

Porath states that the prosecutor improperly withheld three documents, which he later obtained while litigating a civil action against the police department: 1) the complainant homeowner's statement that the intruder entered their home through an unlocked front door that showed no evidence of forced entry and that a jug containing $1,000 in dollars and coins was missing; 2) an investigator's report reflecting that there were no signs of forced entry, property damage, or footprints; and 3) an investigator's report indicating that, based on information he had received from the complainant homeowner, he contacted NBT bank, learned that a $500

coin transaction had occurred, and that the bank surveillance video indicated that someone other than Porath had conducted the transaction.

Porath contends that the homeowner's statement that the door was unlocked and showed no sign of forced entry contradicted the police statement made by his girlfriend, who stated that she saw Porath kick the door in, and the owner's $1,000 reported loss was contrary to his girlfriend's estimation that Porath stole $500 in change. He further argued that the surveillance video controverted his girlfriend's statement that she and Porath cashed in the coins at the NBT Bank.

Thus, the information was only relevant to impeach the evidence against him. But as the Supreme Court has stated, "the Constitution does not require the government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). The *Ruiz* Court reasoned, *inter alia*, that impeachment information need not be disclosed because access to it is a trial right; in the context of a plea, while more information will make a defendant "more aware . . . of the likely consequences" of giving up the right, a defendant is generally only entitled to "understand the nature of the right [being waived] and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it." *Id.* at 630. The Court further emphasized that "the Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id*.

Contrary to Porath's assertion, a review of the identified information indicates that it was not exculpatory because it is possible that Porath kicked in an unlocked door and exchanged the coins at a different time than that captured in the surveillance video. And even if it were exculpatory, his claim would still be meritless as the Supreme Court has never held that exculpatory material (as opposed to impeachment material) must be disclosed prior to a guilty plea. Therefore, a state court determination on that issue cannot be "contrary to clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Friedman v. Rehal*, 618 F.3d 142, 154-55 (2d Cir. 2010) (discussing *Ruiz* and holding that, because no clearly established federal law has been established as to the application

of *Brady* to a guilty plea, such claim was not cognizable on habeas review).[3] Accordingly, Porath is not entitled to relief on this claim either.

---

[3] Indeed, the Second Circuit strongly suggested in dicta that the Supreme Court's decision in *Ruiz* and the Second Circuit's decision in *Friedman* apply with equal force to exculpatory material. *See Friedman*, 618 F.3d at 154 ("[T]he Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial, and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea." (citations omitted)); *see also Donley v. United States*, No. 07–CR–4040, 2011 WL 73076, at *10 (E.D.N.Y. Jan. 10, 2011). The First and Fifth Circuit have reached similar holdings. *See United States v. Mathur*, 624 F.3d 498 (1st Cir. 2010) (stating that pre-plea duty to disclose "potentially exculpatory" information and impeachment information is "unprecedented expansion of *Brady*"); *United States v. Conroy*, 567 F.3d 174 (5th Cir. 2009) (rejecting argument that exculpatory evidence must be turned over before entry of a plea).

Other sister circuits, however, have signaled that they would entertain such a claim. *See, e.g.*, *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) ("*Ruiz* indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence. Given this distinction, it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea."); *United States v. Lestrick*, 82 F. App'x 4, 6 (10th Cir. 2003) ("[U]nder certain limited circumstances, the prosecution's violation of *Brady* can render a defendant's plea involuntary." (quoting *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994)). But, in any event, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' It therefore cannot form the basis for habeas relief under AEDPA." *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (citation omitted).

# V. CONCLUSION

Porath is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: June 6, 2016.

                                           /s/ James K. Singleton, Jr.
                                           JAMES K. SINGLETON, JR.
                                           Senior United States District Judge